IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHNNIE DUANE JOHNS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CIVIL NO. 09-0386-WS-C |
| vs. | ) | |
| | ) | CRIMINAL NO. 07-0232-WS |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER**

This matter is before the Court on the petitioner's motion to vacate and amended motion to vacate. (Docs. 180, 200). The Magistrate Judge entered a report and recommendation ("R&R") that the motion be denied, (Doc. 226), in response to which the petitioner filed objections. (Docs. 227-28). After a careful consideration of the file and de novo review of those portions of the R&R to which objection is made, and of the testimony and argument presented at an evidentiary hearing,[1] the Court concludes that the R&R is due to be adopted, with the additions set forth below, as the opinion of the Court and that the motion to vacate is due to be denied.

**DISCUSSION**

The petitioner pleaded guilty to one count of intentionally possessing pseudoephedrine with the intent to manufacture methamphetamine. The charge arose from a traffic stop that revealed the presence of a large quantity of pseudoephedrine in the truck being driven by the petitioner. A loaded pistol was found under the driver's seat and a long, sharp sling blade under the passenger seat. The pre-sentence

---

[1] The Court has reviewed the entirety of the hearing transcript, in accordance with *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988).

[1]

investigation report ("PSR") included a two-level enhancement for possession of a dangerous weapon, which raised the petitioner's total offense level to 36. The Court adopted the PSR but made a three-level adjustment for acceptance of responsibility and sentenced the defendant to the low end of the resulting guideline range.

The amended motion to vacate lists the following grounds, all asserting ineffective assistance of counsel at sentencing: (1) counsel was ineffective in failing to investigate or research the petitioner's ability to contest the weapons enhancement; (2) counsel was ineffective in failing to challenge the weapons enhancement; (3) counsel was ineffective (assuming a successful challenge to the weapons enhancement) in failing to request safety valve relief; and (4) counsel was ineffective in not arguing that the petitioner should be given a variance based upon his cooperation prior to testing positive for meth. (Doc. 200 at 12-17).

The petitioner argues in part that he is excused from the burden of showing any prejudice from counsel's performance because counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing" within the contemplation of *United States v. Cronic*, 466 U.S. 648, 659 (1984). According to the petitioner, counsel stood mute at sentencing and at the evidentiary hearing admitted he did so under the misguided notion that he could not properly do otherwise after his client pleaded guilty. To the R&R's treatment of this issue, the Court adds the following.

As indicated by the adverb "entirely," the Supreme Court has made clear that "the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002).[2] Thus, any effort to soften the petitioner's sentence renders *Cronic* inapplicable and requires the petitioner to satisfy the two-part *Strickland* standard, including prejudice as therein defined.

---

[2] This standard is "extremely high." *Hunter v. Moore*, 304 F.3d 1066, 1070 n.4 (11th Cir. 2002). The petitioner admits that success is "extremely difficult." (Doc. 223 at 20).

On the day of sentencing, counsel presented an expert to testify as to the petitioner's mental condition and establish that it had deteriorated due to meth use. Counsel argued that the petitioner was incompetent (an argument the Court rejected), but he also asked that the petitioner's condition be considered in imposing sentence. In particular, counsel "ask[ed] [the Court] to do the best you can for him and for society." (Doc. 149 at 30). He continued that, even were the Court not to order an in-custody evaluation, "I just ask the Court to take into consideration his condition." (*Id*. at 33). Because the expert said the petitioner is compromised, "I ask you to consider that in your sentence." (*Id*.). This is patently a plea for a lenient sentence, based on record evidence of mental issues,[3] and it renders *Cronic* inapplicable. *E.g., Conklin v. Schofield*, 366 F.3d 1191, 1202 (11th Cir. 2004) (even in the context of a death penalty sentencing, "if the attorney presents any mitigating evidence, then actual prejudice must be shown") (explaining *Cone*).

The petitioner ignores these direct comments, but he argues more generally that nothing said during the competency phase of the combined competency-sentencing hearing[4] can bleed over to the sentencing phase because the two are somehow "independent." (Doc. 228 at 13). It is of course correct that one's sentence cannot be established at a competency hearing, but this hardly means that nothing argued therein can be considered in imposing sentence once competency is determined – especially when sentencing immediately follows the determination of competency. Here, counsel's plea for leniency was articulated not five minutes before the Court imposed sentence, and it would be absurd to suggest that this plea was, or legitimately could be, ignored by the

---

[3] The petitioner's declaration that "counsel never argued that the evidence adduced at the competency hearing should mitigate [his] sentence," (Doc. 228 at 14; *accord id*. at 7), is simply wrong.

[4] The Court explicitly set the case for a "competency/sentencing hearing." (Doc. 162, Attachment A at 24).

Court simply because it was uttered scant seconds before the Court declared the petitioner competent and turned to his sentence. The petitioner has not established that the quoted portion of *Cronic* can be applied separately to the sentencing portion of a drug case[5] but, even if it can be, counsel's plea for sentencing leniency forms part of the sentencing segment of the case.[6]

Nor has the petitioner shown prejudice from counsel's performance under the *Strickland* standard. The two-level enhancement applies "[i]f a dangerous weapon was possessed." U.S.S.G. § 2D1.1(b)(1). "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id*. Application Note 3. In light of this language, "[o]nce the prosecution has shown by a preponderance of the evidence that the [weapon] was present at the site of the charged conduct, the evidentiary burden shifts to the defendant to show that a connection between the [weapon] and the offense is clearly improbable." *United States v. Hall*, 46 F.3d 62, 63 (11th Cir. 1995). The weapons admittedly were present in the vehicle, which

---

[5] *Cronic* identifies three situations in which prejudice can be presumed. The first is "the complete denial of counsel," which arises when the defendant is "denied counsel at *a critical stage* of his trial." 466 U.S. at 659 (emphasis added). The second, on which the petitioner relies, occurs "if counsel entirely fails to subject the prosecution's *case* to meaningful adversarial testing." *Id*. (emphasis added). The Supreme Court presumably did not use these emphasized terms idly, and they suggest that, while the complete absence of counsel at even a single critical stage triggers the presumption of prejudice, the failure of an attending counsel to engage in meaningful adversarial testing triggers such a presumption only if the failure extends over the entire course of the case, not just a single stage such as sentencing. The Supreme Court in *Bell v. Cone*, 535 U.S. 685 (2002), did not hold otherwise but simply ruled on the alternate ground that, since counsel at sentencing offered an opening statement and objected to the government's evidence, the second *Cronic* scenario could not apply. *Id*. at 691, 696-97. At any rate, *Cone* was a death penalty case, where argument and evidence is presented as at trial and at which a human life is at stake; it is effectively a case within a case. *See id*. at 696 (noting the defendant's insistence that counsel must "mount some case for life"). The only other decision cited by the petitioner that applies the second *Cronic* situation to a sentencing, standing alone, did not explain how doing so comports with *Cronic* and so is unpersuasive.

[6] Indeed, the petitioner elsewhere acknowledges that counsel's efforts occurred "at sentencing." (Doc. 223 at 19).

[4]

was the site of the charged conduct.  That fact places the burden on the petitioner to show the clear improbability that the weapons were connected to the offense of possessing pseudoephedrine with intent to manufacture meth.

The petitioner argues heroically that he can meet this burden because: he contemporaneously denied awareness of the firearm's presence; his mother and others were unaware he possessed a gun;[7] no ammunition and no other weapons were recovered from a search of his home and other locations; and the truck was not his own.  This, he says, refutes his knowledge of the weapons' presence and thus makes it clearly improbable that they were connected with the offense.  (Doc. 225 at 8; Doc. 228 at 16).  While the petitioner's evidence could make it possible that the weapons were unconnected to the offense, it does not come within a country mile of making such a connection clearly improbable.  This is especially so given the uncontroverted evidence that the gun was not hidden but was plainly visible upon opening the driver's door, within easy arm's reach of the petitioner, and that the petitioner was carrying thousands of dollars in cash on his person, demonstrating a need for protection.  On this state of the evidence,[8] there is not the slightest chance – much less a reasonable probability –  the petitioner could have met his heavy burden and avoided the enhancement.  Thus, neither counsel's failure to investigate the enhancement nor his failure to argue against it prejudiced the petitioner within the contemplation of *Strickland*.  Since the petitioner could not possibly be eligible for safety valve consideration with a weapons enhancement, that ground necessarily fails as well.

---

[7] Other than his mother, the petitioner identifies no evidence that third persons did not know of the firearm.  Instead, the petitioner complains that the respondent presented no admissible evidence that others were so aware.  This will not do, since the burden is on the petitioner to prove clear improbability, not on the respondent to prove probability.

[8] As the petitioner objects to them, the Court ignores both the gun-referencing ledger recovered from the petitioner's home and the statement of a non-testifying witness confirming the petitioner's possession of the firearm on other occasions.

After his arrest, the petitioner participated in one controlled buy involving a single gram of cocaine. He agreed to participate in a second, larger buy but left the scene without doing so. He routinely denied or downplayed the involvement in the meth trade of numerous neighbors already known to be so involved, and he refused to name his supplier when he tested positive for meth before trial. Unsurprisingly in light of this unhelpful history, the respondent declined to file a 5K1.1 motion, but the petitioner argues counsel was ineffective in failing to ask for a variance.

Before the R&R was issued, the petitioner conceded that such a variance requires the provision of substantial assistance. (Doc. 223 at 33). The R&R accepted the petitioner's statement of the standard and concluded that the petitioner's efforts fell well below that threshold. (Doc. 226 at 47-48 n.30). Now, having received an unfavorable result, the petitioner denies that substantial assistance is required. (Doc. 228 at 18-19). "[A] district judge has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). In particular, a district judge has discretion not to consider a habeas petitioner's arguments first raised after a magistrate judge has submitted an R&R. *Id*. The *Williams* Court noted the negation of the efficiencies of referrals, and the possibility of gamesmanship, that would occur could litigants foist on district courts arguments and evidence they neglected to present to the magistrate judge. *Id*. at 1291-92. An adequate explanation for the failure might persuade the Court to consider a tardy argument despite these concerns, but the petitioner offers none. Accordingly, the Court in its discretion declines to consider his belated argument that he could receive a variance even without providing substantial assistance.[9]

---

[9] To this date, the petitioner has cited no appellate case actually holding that a variance can be based on less than substantial assistance. On the contrary, "district courts may, at the defendant's request, grant variances at sentencing based on the defendant's substantial assistance to the government." *United States v. Judge*, 649 F.3d 453, 460 (6th Cir. 2011) (emphasis omitted).

The petitioner does not assert that he provided substantial assistance, and he patently did not.[10] There is thus no chance, much less a reasonable probability, that he would have received a variance had counsel so argued, and the petitioner therefore was not prejudiced by that failure.[11]

**CONCLUSION**

After due and proper consideration of all portions of the file relevant to the issues raised, and a de novo determination of those portions of the R&R to which objection is made, the recommendation of the Magistrate Judge made under 28 U.S.C. § 636(b)(1)(B), as supplemented by the foregoing material, is adopted as the opinion of the Court. The motion to vacate is **denied**. Judgment shall be entered accordingly by separate order. A certificate of appealability is also **denied**.

DONE and ORDERED this 9th day of December, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[10] The petitioner suggests that the second controlled buy, from which he bailed, actually represents relevant cooperation because, through a circuitous series of fortuitous events for which he can take no credit, the suspect was eventually charged. Substantial assistance does not stretch so far or so thin.

[11] Even were substantial assistance not essential to a variance, the petitioner's assistance was so minimal, and his obfuscation and disingenuousness so profound, that there is no possibility the Court would have awarded even the smallest of variances.